**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

**VERNA IP HOLDINGS, LLC,**

        Plaintiff,

    v.

**SINGLEWIRE SOFTWARE, LLC**

        Defendant.

C.A. No. 3:25-CV-00072

**JURY TRIAL DEMANDED**

<u>**DEFENDANT SINGLEWIRE'S OPENING BRIEF IN SUPPORT OF ITS RULE 12(b)(6)
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**</u>

Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Philip G. Brown (*pro hac vice
forthcoming*)
pgbrown@fr.com
Texas Bar No. 24132695
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

*Attorneys For Defendant
Singlewire Software, LLC*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   STATEMENT OF THE ISSUES .................................................................... 2

III.  NATURE AND STAGE OF THE PROCEEDING ........................................ 2

IV.   FACTUAL BACKGROUND ........................................................................ 2

V.    LEGAL STANDARD .................................................................................... 4

  A.    Legal Standard for Dismissal Pursuant to Rule 12(b)(6). ................................. 4

  B.    The Law of 35 U.S.C. § 101. ............................................................................ 4

VI.   ARGUMENT ................................................................................................. 6

  A.    Singlewire Could Not Plausibly Meet Each Claim Element ............................. 6

  B.    The '932 Patent is Invalid Under Section 101 .................................................. 9

    1.    Claim 18 of the '932 Patent is representative of all claims. ......................... 10

    2.    *Alice* Step 1: Claim 18 is directed to the abstract idea of providing voice messages
    as localized emergency alerts. .......................................................................... 11

    3.    *Alice* Step 2: Claim 18 does not contain an inventive concept sufficient to confer
    patent eligibility. ............................................................................................. 15

    4.    No claim construction or factual disputes prevent the court from ruling on this issue
    at the rule 12 stage. ........................................................................................ 18

VII.  CONCLUSION .............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*,
    501 F. 3d 1307 (Fed. Cir. 2007)............................................................................9

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc)..........................................................6, 8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ..................................................................................*passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    966 F.3d 1347 (Fed. Cir. 2020) (Chen, J., concurring).........................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................4, 7

*Atos, LLC v. Allstate Ins. Co.*,
    No. 20-06224, 2021 WL 6063963 (N.D. Ill. Dec. 22, 2021).............................10, 11

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
    687 F.3d 1266 (Fed. Cir. 2012)..............................................................................6

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)........................................................................18, 19

*Bilski v. Kappos*,
    561 U.S. 593 (2010)........................................................................................5, 6, 11

*CBA Env't Servs., Inc. v. Toll Bros. Inc.*,
    403 F. Supp. 3d 403 (D.N.J. 2019) .........................................................................7

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)..............................................................................18

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019)..............................................................................12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)................................................................................14

*CLS Bank Int'l v. Alice Corp. Pty.*,
    717 F.3d 1269 (Fed. Cir. 2013)..............................................................................11

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).................................................................10

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)...................................................................5

*Desenberg v. Google, Inc.*,
    2010 WL 3452493 (Fed. Cir. 2010)............................................................8

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)....................................................................................4

*Diamond v. Diehr*,
    450 U.S. 175 (1981)....................................................................................5

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...........................................................14, 15

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018).................................................................12

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)...................................................................5

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)...........................................................13, 17

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016)...................................................................8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)...........................................................................5, 11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016).................................................................14

*Parker v. Flook*,
    437 U.S. 584 (1978)....................................................................................5

*Robocast, Inc. v. Netflix, Inc.*,
    640 F. Supp. 3d 365 (D. Del. 2022)............................................................8

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)...........................................................11, 15

*Simio, LLC v. FlexSim Software Products, Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020).................................................................19

*Tenaha Licensing LLC v. Vocera Commc'ns, Inc.*,
   Case 19-208-LPS-SRF, 2020 WL 30489 (D. Del. Jan. 2, 2020) .......................................14, 17

*In re TLI Commc'ns LLC*,
   823 F.3d 607 (Fed. Cir. 2016) ................................................................................................16

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ..................................................6, 10, 16

*Verna IP Holdings, LLC v. Alert Media, Inc.*,
   No. 21-cv-00422 (Feb. 2, 2022 W.D. Tex.), Dkt. 34 ...............................................................19

*Virnich v. Vorwald*,
   664 F.3d 206 (7th Cir. 2011) ....................................................................................................4

*Yanbin Yu, et al. v. Apple Inc. et al*,
   Case Nos. 2020- 1760, 2020-1803 (Fed. Cir. June 11, 2021) ..................................................16

*Zimmers v. Eaton Corp.*,
   Case 2:15-cv-2398, 2016 WL 4094870 (S.D. Ohio Aug. 2, 2016) .....................12, 13, 14, 17

**Statutes**

35 U.S.C. § 101 ..................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 2, 4, 8, 19

Fed. R. Civ. P. 12 .............................................................................................................1, 7, 18

## I.    INTRODUCTION

Verna's allegations against Singlewire suffer from two fatal flaws. Either warrants dismissal at the Rule 12 stage. First, Verna fails to allege any plausible theory of direct infringement because it cannot plausibly allege that Singlewire transmits any messages through specific cell towers as required by the asserted claims. Second, the asserted '932 Patent's claims are directed to an abstract idea, and therefore ineligible.

Each of the asserted claims requires "transmitting the digitized voice alert through ***specific towers of a cellular communications network***," but Verna fails to allege any factual allegations to satisfy this element of the claim. Singlewire offers mass notification products and services to organizations and institutions. Singlewire is not a cellular provider. Nor does Singlewire own or operate any cellular towers. And Verna cannot allege that Singlewire directs or control any third-party cellular providers to perform any steps. Singlewire's relationship with cellular providers is just like anyone else placing a call. Because Singlewire cannot plausibly practice all elements of the asserted claims, it cannot possibly infringe the '932 Patent.

Additionally, the '932 Patent's claims are directed to the abstract idea of providing voice messages as emergency alerts. The patent admittedly claims only the combination of well-known government emergency alert systems with well-known text-to-speech devices. The claims do not contain any inventive concept because they admit to using this known technology for adding voice alerts to an existing emergency notification system without identifying any inventive way to do this. As such, the '932 Patent's claims are invalid under § 101. Singlewire requests the Court grant its motion to dismiss Verna's claims under Rule 12(b)(6) for failure to state a claim.

## II.     STATEMENT OF THE ISSUES

1.     Whether Verna has sufficiently stated a plausible claim for infringement of the '932 Patent under Rule 12(b)(6), or if the allegations are insufficient to state a claim upon which relief can be granted.

2.     Whether the asserted claims of the Asserted Patent are directed to an abstract idea and therefore invalid under 35 U.S.C. § 101, or if they contain an inventive concept sufficient to confer patent eligibility.

## III.     NATURE AND STAGE OF THE PROCEEDING

On January 31, 2025, Verna filed this lawsuit accusing Singlewire of infringing U.S. Patent No. 11,403,932 (the "'932 Patent"). (Dkt. 1.) Verna accused Singlewire's mass notification products and services of infringing claims 1-18 of the '932 Patent. (*Id.* at ¶ 8.)

## IV.     FACTUAL BACKGROUND

The '932 Patent is titled "Digitized Voice Alerts" and was filed on August 4, 2020 and issued on August 2, 2022. (*Id.* at Ex. A ('932 Patent).) The '932 Patent generally describes "broadcasting instant voice alerts to remote electronic devices automatically during times of emergencies or as a part of security monitoring systems." ('932 Patent at 1:65–67.)

The applicants admitted that instant emergency broadcasting systems were known in the art before the '932 Patent and the predecessors in its family. The FCC's "'PLAN' Personal Localized Alerting Network" was already used as a network "for the transmission of local emergency services, Amber alerts, Presidential messages, government notices, etc." and was cited as prior art to the '932 Patent. (*Id.* at Cover, 20:5–14.) These emergency telecommunication functions were the platform for their idea—not what they claimed the invention to be.

The applicants noted that PLAN "sends text only," a purported disadvantage for "those who are unable to look at their instant text alert such as when driving" or "those that are without a

phone, who are reading the TEXT on their computers, and so forth." (*Id.* at 15:2–11.) The applicants suggested adding "a voice alert" in multiple languages so "users can hear the message without doing anything." (*Id.* at 15:5–11; *see also, e.g., id.* at Title, Abstract; *id.* at 11:51-53.) This claimed idea of the '932 Patent, "if adapted to PLAN, would allow for actual voice alerts (e.g., digitized voice alert from the President, which the public would recognize) to be pushed through to mobile devices in communication with, for example, [a] network." (*Id.* at 28:15–19.) The purported invention of the '932 Patent, in other words, is adding voice alerts to PLAN. (*Id.* at 28:15–24.)

The '932 Patent's claims recite only results-focused, functional steps for providing voice messages as localized emergency alerts. Claim 18 is exemplary:

18. A method for providing instant emergency voice alerts to wireless hand held device users in a specified region, the method comprising:

determining an emergency situation affecting a specified region and requiring emergency notification of the emergency situation to wireless hand held device users in the specified region;

generating and converting a text message indicative of the emergency situation into a digitized voice alert; and

transmitting the digitized voice alert through specific towers of a cellular communications network in the specified region for distribution of an emergency announcement about the emergency situation provided by the digitized voice alert to at least one wireless hand held device in communication with the specific towers of the cellular communications network in the specified region.

(*Id.* at Cl. 18.) Figure 6 depicts the claimed steps as "method 440" and Figure 9 illustrates a "system 494" for executing the method. (*Id.* at 14:61–65, 17:3–12).

Claim 18 recites the same steps that the applicants acknowledged are performed by the prior art PLAN system. Government officials detect and "send alerts to PLAN." (*Id.* at 27:66–28:1.) "[T]hen PLAN sends the alert to ***participating wireless carriers***." (*Id.* at 28:2–3 (emphasis

3

added).) Wireless carriers instantly "push the alerts from, for example, cell towers to mobile telephones and other mobile electronic devices in the affected area." (*Id.* at 28:4–6.) The alerts are "text-like messages" and "geographically targeted." (*Id.*at 28:6–7.)

Each of the claims of the '932 Patent critically require "transmitting the digitized voice alert through specific towers of a cellular communications network." (*See id.* at Cl. 18.) This step in the claims necessarily involves wireless carrier companies that own and operate cell towers. The specification explains that this step necessarily incorporates "participating wireless companies" to "use their cell towers." (*Id.* at 20:5–20, 27:64–28:24.)

## V.    LEGAL STANDARD

### A.    Legal Standard for Dismissal Pursuant to Rule 12(b)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face" or it is subject to dismissal. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). Dismissal under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Virnich*, 664 F.3d at 212 (internal citations omitted).

### B.    The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract ideas are ineligible

4

for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

## VI.    ARGUMENT

### A.    Singlewire Could Not Plausibly Meet Each Claim Element

Verna's Complaint should be dismissed because Verna has not pled plausible allegations of infringement of each element of the asserted claims. Verna's allegations rely solely on Singlewire's accused system places voice calls that may reach cell phones. (*See* Dkt. 1, Ex. B at 15.) But Verna has not, and cannot allege that Singlewire is a cellular carrier that operates cellular towers.

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). The single independent claim that Verna charted in Exhibit B to the Complaint both require "***transmitting*** the digitized voice alert through ***specific towers of a cellular communications network*** in the specified region for distribution." ('932 Patent at Cl. 18.) Verna does not allege that Singlewire is a cellular network provider that controls how to place calls through cell towers. (*See* Dkt. 1, Ex. B.)

Singlewire is not a cellular communications provider and does not own, control, lease, or use any towers in a cellular network. Rather, Singlewire offers mass notification solutions to

6

organizations and institutions to facilitate notifying their members. Although Singlewire can place voice calls, Singlewire has no relationship with a cellular provider. It uses telephone networks (cellular or otherwise) just as any other user does. *See CBA Env't Servs., Inc. v. Toll Bros. Inc.*, 403 F. Supp. 3d 403, 418-20 (D.N.J. 2019) (granting motion to dismiss where plaintiff failed to allege something more to control the work of its contractors). Verna does not allege otherwise.

In support of its claims, Verna's allegations merely reference Singlewire's ability to place a "text to speech … to Mobile phones" among many communication methods and then jumps to the unsupported legal conclusion that "Singlewire Software InformaCast transmits the digitized voice alert . . . through specific towers of a cellular communications network (the cell tower near the cell phone user) in the specified region."



(Dkt. 1, Ex. B at 15.) This is an unsupported legal conclusion with no factual support. The cited evidence demonstrates that cell phones are just one of several phone types that may be reached. *Id.* There is no factual allegation that Singlewire interacts with telephone network providers (cellular or otherwise) beyond what any other user placing a telephone call does. As such, the Complaint does not surpass the Rule 12 threshold. *See Iqbal*, 556 U.S. at 678; *see also Robocast,*

*Inc. v. Netflix, Inc.*, 640 F. Supp. 3d 365, 370 (D. Del. 2022) (granting motion to dismiss where "Robocast [] offers no factual basis for its claim. Indeed, the Complaint fails to identify any third parties at all, let alone allege facts supporting a relationship between those parties and Netflix."). Verna makes no allegations that the cell towers are owned or controlled by Singlewire. Consequently, there are no plausible facts alleged such that Singlewire could directly infringe this element of the asserted claims.

Verna's Complaint did not allege divided or joint infringement based on alleged direction or control of cellular providers that transmit calls through specific cellular towers. (*See* Dkt. 1 at ¶¶ 8–13.) "A claim of joint infringement [] requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1338–39 (Fed. Cir. 2016). When a plaintiff fails to plead any allegations "that can form the basis of a reasonable inference that each claim step was performed by or should be attributed to Defendants," the case should be dismissed. *Id.* at 1340 (affirming dismissal where the "Complaint fails to plausibly plead sufficient facts to ground a joint infringement claim under this court's *Akamai* decision and does not satisfy the *Iqbal/Twombly* pleading standard"); *see also Desenberg v. Google, Inc*., 2010 WL 3452493, *2–*3 (Fed. Cir. 2010) (affirming dismissal of complaint under Rule 12(b)(6) where the asserted claim required two actors, and the patentee had failed to plead that the accused infringer sufficiently controlled the acts of the other actor).

Although Claims 10 and 17 are directed to system or apparatus claims, Verna's Complaint did not allege any other specific facts that could plausibly demonstrate that Singlewire's accused system can control the cellular network to transmit calls through specific towers. To begin, Verna

does not allege any unique facts with respect to the elements of Claim 10 and 17, charting only Claims 1 and 18. In any event, independent Claims 10 and 17 each require that Singlewire provides a "medium" with "code" that performs this "transmitting" step. But all that Verna has alleged is that Singlewire's system can place voice calls to members associated with a geographic area (whether it is through their "work," "home," "cell" or "other" phone). It also relies solely on performance by Singlewire of the methods in Claims 1 and 18 to plead infringement of Claims 10 and 17. (*See* Dkt. 1 at ¶ 10.) Verna has not plead sufficient facts plausibly demonstrating that Singlewire practices the system and apparatus claims of Claims 10 and 17.

Finally, because Verna has not plausibly alleged direct infringement by Singlewire, it also has not pleaded indirect infringement and those claims must also be dismissed. *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F. 3d 1307, 1313 (Fed. Cir. 2007) (explaining that plaintiff must "either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit")

Verna could not meet the pleading requirement of joint infringement even if it were allowed to amend. It cannot, in good faith, allege any non-conclusory facts demonstrating that Singlewire exercise control or operate a joint enterprise with any third-party that could satisfy this element of the claim. For these reasons, Verna's claims of direct infringement by Singlewire are not well-plead, facially impossible, and should be dismissed.

### B.     The '932 Patent is Invalid Under Section 101

The claims of the '932 Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. All claims are directed to the abstract idea of providing voice messages as localized emergency alerts, and none of the claims contain an "inventive concept . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." See *Alice*, 134 S. Ct. at 2355 (emphasis added).

### 1.    Claim 18 of the '932 Patent is representative of all claims.

Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). For the reasons that follow, Claim 18 of the '932 Patent is representative of all claims. *See Atos, LLC v. Allstate Ins. Co.*, No. 20-06224, 2021 WL 6063963, at *7 (N.D. Ill. Dec. 22, 2021) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis); *see also PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (same).

The '932 Patent has 4 independent claims (1, 10, 17, 18), all of which recite method and system claims comprising the same components that perform the same essential elements: determining there was an emergency, generating an alert describing the emergency and converting it to a voice message, and sending the voice alert through specific towers in a cellular network to wireless devices.  The differences between the independent claims are negligible. For example, the difference between Claim 1 and Claim 18 is that Claim 1 also requires converting the digitized voice alert into another language from a selection of languages. These differences are immaterial to the § 101 analysis because each of the claims are directed to the same abstract concept— providing voice messages as localized emergency alerts. Similarly, Claims 10 and 17 are systems or apparatus claims capable of performing the same essential steps.

The limitations in the dependent claims also fail to provide an inventive concept. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("[N]one of the dependent claims add anything of 'practical significance to the underlying abstract idea' that would otherwise salvage the patentability of those claims."). The '932 Patent's dependent claims add additional limitations regarding the abstract idea, but these are also token pre- or post-solution activity that

cannot confer an inventive concept. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *see also CLS Bank Int'l v. Alice Corp. Pty*., 717 F.3d 1269, 1300 (Fed. Cir. 2013) (noting limitations must do more than add "only insignificant or token pre- or post-solution activity" to be meaningful). For example, the table below lists the additional limitations in the dependent claims:

| Additional, Non-Inventive Limitations | Dependent Claims of the '932 Patent |
|---|---|
| Establishing a user profile to determine the language | 2–5, 9, 11, 12, 14–16 |
| Interrupting a call to push voice alerts | 6 |
| Converting to more than one language | 7 |
| Playing the voice alert through a speaker | 8 |

The difference between the dependent and independent claims are immaterial to the § 101 analysis because each is drawn to the same abstract idea, and each includes elements performed by computing components that are "purely conventional," using generic components. *Alice*, 573 U.S. at 225. Claim 18 of the '932 Patent is thus representative of the other claims in the patent. *See Atos,* 2021 WL 6063963, at *7.

### 2. *Alice* Step 1: Claim 18 is directed to the abstract idea of providing voice messages as localized emergency alerts.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '932 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of providing voice messages as localized emergency alerts. *See Alice*, 573 U.S. at 217–24; *Bilski*, 561 U.S. at 611.

In assessing whether a claim is directed to an abstract idea, courts begin by analyzing the "focus" of the claim, i.e., its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that the analysis starts by examining a patent's "'claimed advance' to determine whether the claims are directed to an

11

abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

The "claimed advance" of Claim 18 is providing voice messages as localized emergency alerts. The '932 Patent recites this abstract idea as a series of basic steps:

(1) detecting an emergency local to a region;
(2) generating an alert describing the emergency and converting it to a voice message;
(3) sending the alert through cell towers in the local region to electronic devices.

(*See* '932 Patent at Cl. 18.) This claimed notification by voice rather than text is a concept, not an invention, and thus ineligible for patent protection. *See, e.g.*, *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019) ("[T]he broad concept of communicating information wirelessly, without more, is an abstract idea."); *Affinity Labs*, 838 F.3d at 1258 (holding patent claims directed to "the function of wirelessly communicating regional broadcast content to an out-of-region recipient" to be ineligible); *Zimmers v. Eaton Corp.*, Case 2:15-cv-2398, 2016 WL 4094870, at *5 (S.D. Ohio Aug. 2, 2016) (finding claims "drawn to the abstract idea of providing alert notifications to multiple persons" were ineligible).

The '932 Patent itself demonstrates that the claimed methods, systems, and processor-readable media for providing emergency voice alerts are abstract ideas, "fundamental . . . practice[s] long prevalent in our system" and "method[s] of organizing human activity . . . ." *Alice*, 573 U.S. at 220 (quotations omitted). The specification describes how the claimed idea is practiced during, "a national emergency in which the President of the United States addresses the nation" and the user "instantly hear[s] the President" as a notification. ('932 Patent at 21:3–6.) It also is practiced by the FCC's PLAN system, which is used "for the transmission of

local emergency services, Amber alerts, Presidential messages, government notices, etc." (*Id.* at 20:6–7.) The claimed concept is no different from activity humans have long performed— providing voice messages as localized emergency alerts—except that the claimed method is stated to be automatic, using conventional, generic computer technology. *See Alice*, 573 U.S. at 224–25 (finding routine activity long performed by humans and simply implemented on a computer does not confer patentability).

Claim 18 is couched in terms of automating voice notifications, and courts have routinely ruled that claims directed to "providing alert notifications to multiple persons" are abstract. *Zimmers*, 2016 WL 4094870, at *5. The Federal Circuit has generally found claims abstract where they are directed to some combination of acquiring information, analyzing information, and/or sending notifications. *See FairWarning IP, LLC*, 839 F.3d at 1094–95 (claims "directed to collecting and analyzing information to detect misuse and notifying a user when misuse is detected" were drawn to a patent-ineligible abstract idea); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (holding that claims covering a system and method of "dynamically manag[ing] multiple sets of XML documents" were "at their core, directed to the abstract idea of collecting, displaying, and manipulating data").

Other courts have analyzed claims similar to Claim 18 and found them abstract. The claims analyzed in *Zimmers* are particularly congruent to Claim 1. The ineligible claims in *Zimmers*, like Claim 18 of the '932 Patent, recited "[a] system for providing a message to a plurality of locations on a geographic basis," including "a threat identification system that evaluates threats and identifies geographic areas to receive warnings" and sending alerts via "voice or facsimile communication via a fixed or mobile telephone[.]" *Zimmers*, 2016 WL 4094870, at *2. The *Zimmers* court found that those claims, were "drawn to the abstract idea of providing alert

13

notifications to multiple persons" and that "providing alert notifications to multiple persons was a common business activity before the [asserted] patents." *Id.* at *1, 5. Additionally, the court in *Tenaha Licensing* analyzed a patent "directed to 'alert and notification transmission'" and found the claims were ineligible. *Tenaha Licensing LLC v. Vocera Commc'ns, Inc.*, Case 19-208-LPS-SRF, 2020 WL 30489, at *4 (D. Del. Jan. 2, 2020) (report and recommendation). The court in *Tenaha* found that the featuring "an audible or visible alert notification" to an emergency was insufficient to avoid a finding of an abstract idea at Step 1. *Id.* at *5-6.

The claimed invention does not "improve the functioning of the computer itself," for example by improving "the way a computer stores and retrieves data in memory." *Alice*, 573 U.S. at 225; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). Nor does it "improve[] an existing technological process," for example by reciting "a specific asserted improvement in computer animation, i.e., the automatic use of rules of a particular type." *Alice*, 573 U.S. 223; *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). The specification generally describes generic components capable of performing these functions. (*See, e.g.*, *id.* at 11:12–11:40 (describing prior art text-to-speech engines), 27:64–28:60 (describing the prior art PLAN system and cellphone push notifications).) This leads to "claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).

Claim 18 is like those claims held ineligible by the Federal Circuit where "the claimed invention is entirely functional in nature" and "[n]othing in the [patent figures] or the text of the specification provides any details regarding the manner in which the invention accomplishes the recited functions." *Affinity Labs*, 838 F.3d at 1260. As Federal Circuit Judge Chen commented,

14

"while not all functional claiming is the same, simply reciting a functional result at the point of novelty poses serious risks under section 101." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 966 F.3d 1347, 1356 (Fed. Cir. 2020) (Chen, J., concurring) (quotations omitted); *see also SAP Am.*, 898 F.3d at 1167 (emphasizing that, as "reflected repeatedly in our cases," a claimed invention must embody a concrete solution to a problem having "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it").

Additionally, Claim 18 lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. Claim 18 does not describe with detail how the desired result is achieved—for example, how the emergency is detected, how the message is generated and converted, or how the message is transmitted. Instead, Claim 18 merely recites broad, generic computer functions such as "determining" emergencies ", "generating" messages, "converting" alerts, and transmitting" alerts. ('932 Patent at Cl. 18.) Unlike *Enfish*, Claim 18 does not provide details to implement these broad functions or recite any unconventional methodology amounting to a specific improvement in the way computers operate. Each claim is instead focused "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336. The same is not true of Claim 18.

Accordingly, Claim 18 fails *Alice* step one. Because it is representative, all other claims at issue are directed to an abstract idea.

### 3.    *Alice* **Step 2: Claim 18 does not contain an inventive concept sufficient to confer patent eligibility.**

Because Claim 18 of the '932 Patent is directed to an abstract idea, the Court must next determine whether the claims contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted).

To pass this test, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted).

Claim 18 fails *Alice*'s second step because it is implemented on generic computer technology performing conventional functionality and does not contain an inventive concept sufficient to confer eligibility, whether its limitations are considered individually or as an ordered combination. Considered individually, the claim elements of the '932 Patent only recite generic components performing routine functions. The wireless hand held device is a generic "Smartphone," the text and audio alerts are "text data file[s]" and "audio file[s]," and the specific towers are "cell towers" operated by wireless carriers. ('932 Patent at 13:10–14, 21:52–56, 28:3–6.) Prior art text-to-speech converters and emergency notification systems are used to perform all the claimed steps of "determining," "generating," "converting," and "transmitting" an emergency and associated voice notification. (*Id.* at 11:35–12:38, 27:64–29:10, Cl. 18.) The '932 Patent admits that push technology has been used to instantly send notifications since "the 1990s." (*Id.* at 27:64–29:10.) And even if such automation is not explicitly spelled out in the specification as being known, mere automation is not enough, particularly where, Claim 18 does not describe the particular manner in which the automation is accomplished and instead recites the end result. *See In re TLI Commc'ns LLC*, 823 F.3d 607, 615 (Fed. Cir. 2016) (finding "vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention" at step two).

No limitations in the claims of the asserted patent rise to the level of an inventive concept under step two of the *Alice* test. *See, e.g., Yanbin Yu, et al. v. Apple Inc. et al*, Case Nos. 2020-1760, 2020-1803, at 9-10 (Fed. Cir. June 11, 2021) ("The claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement—the generic hardware

limitations of claim 1 merely serve as a conduit for the abstract idea.") (quotations omitted). Claim 18 provides no specific technological solution to any alleged problems. Rather, it functionally claims the desired result by applying the abstract idea of providing voice messages as localized emergency alerts using conventional computer components, reciting nothing beyond the abstract idea itself. *BSG Tech*, 899 F.3d at 1289-90 ("These transformative elements must supply an 'inventive concept' that ensures the patent amounts to 'significantly more than a patent upon the [ineligible concept] itself.'") (quoting *Alice*, 573 U.S. at 217-18 (alteration in original)); *Intellectual Ventures I,* 850 F.3d at 1342 ("Our law demands more" than claim language that "provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it.").

Not only does the '932 Patent fail to describe how any of these steps are inventive, but the *Zimmer* court previously explained that claim limitations regarding "the types of alert origination, threat identification, and messages, as well as the criteria used in forwarding messages and selecting recipients" fail to transform the abstract claim into something inventive. *Zimmers*, 2016 WL 4094870, at *8. And the *Tenaha* court similarly found that "localized . . . merely conveys that the transmission . . . is limited in range" and does not supply an inventive concept. *Tenaha*, 202 WL 30489, at *7. As in these cases, the present specification contradicts the assertion that Claim 18 is inventive.

Considered as an ordered combination, the claim elements do not add anything inventive to the underlying abstract idea. There is nothing to indicate how the combination of claimed components amounts to an inventive concept. The applicants admitted as much when describing how the prior art accomplished the abstract idea by implementing well-known functions. (*See e.g.,* '932 Patent at 11:12–11:40, 27:64–28:40.) Because "all of the steps to the claimed process are

accomplished by implementing well-known methods using conventional components," the '932 Patent's claims also fail step two and are invalid. *See Elec. Power Grp.*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network and display technology for gathering, sending, and presenting the desired information."). Unlike cases like *Cellspin*, the claims here do not recite a "combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent ineligible idea." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019). Rather, Claim 18 merely recites the steps of detecting an emergency, creating an alert, and then sending that message. This ordered combination is performed in a routine and conventional way.

Accordingly, Claim 18 fails the second step of the *Alice* analysis.

### 4. No claim construction or factual disputes prevent the court from ruling on this issue at the rule 12 stage.

The issue of the patent eligibility is ripe for the Court's consideration because there are no factual or claim construction issues. This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id*. After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the

specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id*. at 1370.

Here, in contrast, there is no factual dispute whether the claims of the '932 Patent include an inventive concept, Verna has not alleged that any such inventive concept exists, and no claim construction issues bear on the eligibility issue. The Court's ineligibility analysis should disregard Verna's boilerplate legal conclusions about the inventive aspects of its asserted patent. *See Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). Indeed, Verna's single assertion regarding eligibility is a single sentence that the "'932 patent relates to a novel and improved methods, systems and processor-readable media for providing instant/real-time Voice alerts automatically to remote electronic devices." (Dkt. 1 at ¶ 7.)

Further, the previous denial of a motion to dismiss in the Western District of Texas regarding a related patent should not control this court. *Verna IP Holdings, LLC v. Alert Media, Inc.*, No. 21-cv-00422, (Feb. 2, 2022 W.D. Tex.), Dkt. 34. That case considered the eligibility of U.S. Patent No. 8,265,938, a family member of the '932 Patent. Ultimately, Judge Albright denied the motion to dismiss not because the patent was eligible, but because under the circumstances in that case, "[f]or the asserted patent, claim construction, fact discovery, and expert reports are necessary." *Id*. at 9. Here, the parties have not "dispute[d] the constructions of several claim terms." *Id.* at 8. Claim construction is not necessary. Additionally, the '932 Patent contains even fewer claim elements, making this analysis even simpler.

## VII.    CONCLUSION

For the foregoing reasons, Singlewire respectfully requests that the Court dismiss Verna's claims for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Singlewire requests dismissal with prejudice.

Dated: March 21, 2025

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Neil J. McNabnay*

Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Philip G. Brown (*pro hac vice* forthcoming)
pgbrown@fr.com
Texas Bar No. 24132695

1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**ATTORNEYS FOR DEFENDANT
SINGLEWIRE SOFTWARE, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on March 21, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Neil J. McNabnay*
Neil J. McNabnay

20