# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| **VERNA IP HOLDINGS, LLC,** | |
| Plaintiff, | C.A. No. 3:25-CV-00072 |
| v. | **JURY TRIAL DEMANDED** |
| **SINGLEWIRE SOFTWARE, LLC** | |
| Defendant. | |

## <u>DEFENDANT SINGLEWIRE'S MOTION FOR SANCTIONS</u>

FISH & RICHARDSON P.C.
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Philip G. Brown (*pro hac vice*)
pgbrown@fr.com
Texas Bar No. 24132695
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

*Attorneys For Defendant*
*Singlewire Software, LLC*

## TABLE OF CONTENTS

I.  FACTUAL BACKGROUND ................................................................................... 1

   A.  Verna's Lack of Standing ........................................................................ 1

   B.  The '932 Patent Requires Transmission to Specific Cell Towers ................................... 3

   C.  Singlewire's Letter ................................................................................ 5

II.  LEGAL STANDARD ....................................................................................... 5

III.  ARGUMENT ............................................................................................... 6

   A.  Verna Lacked Standing from Day One and has Willfully Ignored this Flaw ................... 6

   B.  Verna's Allegations of Infringement are Objectively Frivolous ..................................... 9

   C.  Sanctions are Necessary to Deter Verna and Verna's Counsel from Pursuing Future Frivolous Cases ................................................................................ 12

IV.  CONCLUSION ............................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F. 3d 1359 (Fed. Cir. 2010)...........................................................................................7

*AmeriPath, Inc. v. Hebert*,
447 S.W. 3d 319 (Tex. App.—Dallas 2014, pet. denied)........................................................7

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990).............................................................................................................6

*Fries v. Helsper*,
146 F.3d 452 (7th Cir. 1998) ................................................................................................6

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019)............................................................................................7

*mCom IP, LLC v. Cisco Sys. Inc.*,
No. 6:22-CV-00261-ADA, Dkt. 78 (W.D. Tex. Dec. 18, 2025) (attached as
Ex. 7)...........................................................................................................................13, 14

*Merck & Co. v. Teva Pharm. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005)..........................................................................................12

*Novoselsky v. Zvunca*,
324 F.R.D. 197 (E.D. Wis. 2017) .........................................................................................6

*PS Prods. Inc. v. Panther Trading Co. Inc.*,
122 F.4th 893 (Fed. Cir. 2024) ..........................................................................................10

*Silent Comm'ns, LLC v. BlackBerry Corp.*,
6:22-cv-00252-ADA, (W.D. Tex. May 19, 2023) ..................................................................7

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
753 F.3d 1291 (Fed. Cir. 2014)..........................................................................................10

*Szabo Food Service, Inc. v. Canteen Corp.*,
823 F.2d 1073 (7th Cir. 1987) .............................................................................................6

*UTTO Inc. v. Metrotech Corp.*,
119 F.4th 984 (Fed. Cir. 2024) ..........................................................................................11

*Verna IP Holdings, LLC v. Alert Media, Inc.*,
No. 6:21-CV-00422-ADA, 2023 WL 5918320 (W.D. Tex. Sept. 11, 2023) .........................13

*Verna IP Holdings, LLC v. Dais, Inc.*,
　　No. 3:23-cv-02594-E, Dkt. 32 (July 15, 2024 N.D. Tex.) ........................................................2

*Verna IP Holdings, LLC v. Pocketstop, LLC*,
　　3:24-cv-02408-L-BW, Dkt. 28 (N.D. Tex. Nov. 3, 2025) ......................................................11

**Statutes**

35 U.S.C. § 285 ..............................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................................................... *passim*

## TABLE OF EXHIBITS

| No. | Short Name | Description |
|---|---|---|
| 1 | Rule 11 Letter | Letter to Verna re Rule 11 Request for Dismissal, served on March 5, 2026 |
| 2 | '932 Patent | U.S. Patent No. 11,403,932 |
| 3 | *Silent* Dismissal | *Silent Comm'ns, LLC v. BlackBerry Corp.*, 6:22-cv-00252-ADA, Dkt. 57 (W.D. Tex. May 19, 2023) |
| 4 | *Silent* Fee Award | *Silent Comm'ns, LLC v. BlackBerry Corp.*, 6:22-cv-00252-ADA, Dkt. 106 (W.D. Tex. March 25, 2025) |
| 5 | March Email | March 5, 2026 Email fr. Ramey |
| 6 | Infringement Contentions | Exhibit A to Plaintiff's Preliminary Infringement Contentions, served on April 4, 2025 |
| 7 | *mCom* Order | *See mCom IP, LLC v. Cisco Sys. Inc.*, No. 6:22-CV-00261-ADA, Dkt. 78 (W.D. Tex. Dec. 18, 2025) |

Over one year ago, Verna filed this case asserting a patent it had no legal right to assert based on an objectively frivolous infringement theory. Singlewire is now forced to seek Rule 11 sanctions because Verna refuses to dismiss this case despite objective legal and factual flaws dooming its case. Singlewire does not seek Rule 11 sanctions lightly, but Verna has refused to objectively evaluate its case and continues to pursue frivolous and baseless claims.

Despite multiple defendants in previous Verna lawsuits identifying Verna's standing issues on the public record, Verna elected to file this case without attempting to cure its facially deficient standing. Verna offers no evidence of title to the asserted '932 Patent except for a purported assignment executed on October 11, 2023. But Verna did not exist until October 24, 2023, and so the assignment was void because the entity did not exist at the time of purported agreement. Verna acknowledges this flaw but refuses to acknowledge the legal consequence—it did not have standing when it filed this case and no post-suit reformation can cure that defect.

Verna's infringement theory is also objectively frivolous. Each of the asserted claims requires "transmitting the digitized voice alert through ***specific towers of a cellular communications network***," and Singlewire cannot infringe the claims because Singlewire is not a cellular provider, and it does not own or operate any cellular towers. In no way can Singlewire control transmission to specific cellular towers. Because Singlewire cannot even arguably practice all elements of the asserted claims, it cannot infringe the '932 Patent.

## I.    FACTUAL BACKGROUND

### A.    Verna's Lack of Standing

Plaintiff is Verna IP Holdings, LLC ("Texas Verna" or "Verna"), a Texas limited liability company with its principal place of business in Austin, Texas. (Dkt. 1 ¶ 1.) Texas Verna was formed on October 24, 2023. (Dkt. 25, Ex. 1.)



Texas Verna asserts U.S. Patent No. 11,403,932 (Ex. 2, '932 Patent"). However, its "Proof of Standing" submission (Dkt. 24) shows the '932 Patent was assigned to Texas Verna on October 11, 2023, thirteen days **before** Texas Verna existed. (Dkt. 24 at Ex. A (showing assignment to Texas Verna by Verna IP Holdings, LLC, a New Mexico limited liability company ("New Mexico Verna")).)

| ASSIGNOR: VERNA IP HOLDINGS LLC | | | |
|---|---|---|---|
| Name | Title | Date | Signature |
| Luis M. Ortiz | President Managing Member | 10/4/23 | |
| Kermit D. Lopez | Secretary and Treasurer Managing Member | 10/11/2023 | |

After Verna submitted the Proof of Standing documents, Singlewire moved to dismiss the complaint for lack of standing. (Dkt. 25.) Without a valid agreement assigning the patent, Verna lacked standing to bring infringement claims against Singlewire. This was not the first time that Verna was alerted to this deficiency. Rather, Verna was on notice well before filing this case. *See Verna IP Holdings, LLC v. Dais, Inc.*, No. 3:23-cv-02594-E, Dkt. 32 at 2 (July 15, 2024 N.D. Tex.) ("The purported assignment of the '932 Patent to Verna was ineffective because Verna did not exist at the time the assignment was entered into."); *see also*, Dkt. 25 at 6 (listing additional cases).

Verna has refused to acknowledge these deficiencies and dismiss its case at multiple junctures. For example, at least two times Verna represented to this Court that it "owns the '932

2

patent by assignment" and the "assignment records are believed to establish standing." (Dkt. 1 at ¶ 6; Dkt. 24 at 1.) Verna doubled down in its Response to Singlewire's Motion to Dismiss and raised new frivolous arguments to explain away its ineffective patent transfer, including that Texas Verna was a partnership until LLC formation (Dkt. 28 at 4–5), and that reformation is available to cure its lack of standing (Dkt. 28 at 7–8.).

More recently, on March 5, 2026, Singlewire sent Verna a letter reiterating the deficiencies in its standing and communicating Singlewire's intent to seek relief under Rule 11. (Ex. 1, Rule 11 Letter.) Verna finally acknowledged the flaw in its case, but rather than dismiss, subsequently moved for equitable relief, asking the Court on March 6, 2026, to reform the void assignment. (*See* Dkt. 36.) However, Verna asserts no basis for why reformation could be available where one of the contracting parties (Texas Verna) did not exist at the time of the purported agreement. (*See* Dkt. 31 at 4–6.) Verna did not attempt to engage with the arguments or distinguish the case law in Singlewire's previous briefing. (*See* Dkt. 36.)

### B.    The '932 Patent Requires Transmission to Specific Cell Towers

The '932 Patent is titled "Digitized Voice Alerts" and was filed on August 4, 2020 and issued on August 2, 2022. (Ex. 2, '932 Patent.) The '932 Patent generally describes "broadcasting instant voice alerts to remote electronic devices automatically during times of emergencies or as a part of security monitoring systems." (*Id.* at 1:65–67.)

The patent explains that instant emergency broadcasting systems were known in the art before the '932 Patent and the predecessors in its family. The FCC's "'PLAN' Personal Localized Alerting Network" was already used as a network "for the transmission of local emergency services, Amber alerts, Presidential messages, government notices, etc." and was cited as prior art to the '932 Patent. (*Id.* at Cover, 20:5–14.) These emergency telecommunication functions were the platform for their idea—not the claimed invention.

3

The claims recite functional steps for providing voice messages as localized emergency alerts. Claim 18 is exemplary:

18. A method for providing instant emergency voice alerts to wireless hand held device users in a specified region, the method comprising:

determining an emergency situation affecting a specified region and requiring emergency notification of the emergency situation to wireless hand held device users in the specified region;

generating and converting a text message indicative of the emergency situation into a digitized voice alert; and

***transmitting the digitized voice alert through specific towers of a cellular communications network in the specified region*** for distribution of an emergency announcement about the emergency situation provided by the digitized voice alert ***to at least one wireless hand held device in communication with the specific towers of the cellular communications network in the specified region***.

Except for the function of converting text to voice, the parts of Claim 18 emphasized above recite the same steps that the applicants acknowledged were performed by the prior art PLAN system. Government officials detect and "send alerts to PLAN." (*Id.* at 27:66–28:1.) "[T]hen PLAN sends the alert to participating wireless carriers." (*Id.* at 28:2–3 (emphasis added).) The wireless network must be "either configured [as] a PLAN or equipped with PLAN capabilities." (*Id.* at 20.) Wireless carriers instantly "push the alerts from, for example, cell towers to mobile telephones and other mobile electronic devices in the affected area." (*Id.* at 28:4–6.) The alerts are "text-like messages" and "geographically targeted." (*Id.* at 28:6–7.)

The patent explains what it means by "geographically targeted" in the context of cellular networks with an example of what happens when the system targets Chicago: "For example, a customer living in downtown New York ***would not*** receive a threat alert if they happen to be in Chicago when the alert is sent. Similarly, someone visiting downtown New York from Chicago on that same day ***would*** receive the alert." (*Id.* at 28:8-12 (emphasis added).)

4

### C.    Singlewire's Letter

On March 5, 2026, Singlewire sent Verna a letter again detailing two dispositive issues: Verna's lack of standing and the impossibility of Singlewire's infringement. (Ex. 1, Rule 11 Letter.) Verna ignored this letter and again ignored the merit (or lack thereof) in its case.

## II.    LEGAL STANDARD

Under Rule 11(b) of the Federal Rules of Civil Procedure, an attorney certifies to the best of his knowledge, after a reasonable inquiry under the circumstances, that the "pleading, written motion, or other paper" he presents to the Court is not for "any improper purpose." Fed. R. Civ. P. 11(b)(1). An attorney also certifies that the "claims, defenses, and other legal contentions are warranted." *Id.* at 11(b)(2). Further, an attorney certifies that his "factual contentions have evidentiary support." *Id.* at 11(b)(3).

The Court "may impose an appropriate sanction on any attorney, law firm, or party . . . that violated" Rule 11. Fed. R. Civ. P. 11(c)(1). Rule 11 provides that, by signing and filing a pleading, written motion, or other paper, an attorney certifies: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by non-frivolous argument for extending modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information. Fed. R. Civ. P. 11(b). The Seventh Circuit has identified four criteria:

> There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the

5

modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact". The attorney filing the complaint or other paper must satisfy all four requirements.

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987).

Sanctions under Rule 11 are "aimed at curbing abuses of the judicial system." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990). "One of the basic purposes of Rule 11 of the Federal Rules of Civil Procedure is 'to deter baseless filings in the district court.'" *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir. 1998). Rule 11 imposes duties and "provides for an appropriate sanction to be imposed if those duties are violated." *Novoselsky v. Zvunca*, 324 F.R.D. 197, 202 (E.D. Wis. 2017).

## III.    ARGUMENT

Verna's claims have been both legally and factually deficient from the onset because (1) Verna never had any right to assert the '932 Patent, and (2) Singlewire could not possibly infringe any of asserted claims. Both issues should have been identified in Verna's pre-suit investigation and resulted in an objectively deficient complaint and subsequent filings.

### A.    Verna Lacked Standing from Day One and has Willfully Ignored this Flaw

When this case was filed, Verna had no standing to assert the '932 Patent. The assignment Verna relies on is invalid and does not establish Verna's rights to the '932 Patent. When the assignment was executed, the assignee, Texas Verna, did not exist, and so it could not receive right to assert the '932 Patent. Without the right to assert the '932 Patent, Verna has no standing to bring this action.

It is undisputed that Verna relies on an assignment that was executed before the assignee existed. (Dkt. 24, Ex. A (assignment dated October 11, 2023); Dkt. 25, Ex. 1 (formation dated October 24, 2023).) This assignment is ineffective. Under Texas law, an entity does not exist until the certificate of formation is filed, and an entity cannot enter into a contract before it exists. Tex.

6

Bus. Org. Code. § 3.001(c) ("The existence of a filing entity commences when the filing of the certificate of formation takes effect"); *AmeriPath, Inc. v. Hebert*, 447 S.W. 3d 319, 332–333 (Tex. App.—Dallas 2014, pet. denied) (explaining it is a "settled rule that if one of the parties does not exist, no contract can be formed"). Because Texas Verna did not exist when the purported assignment was executed, it could not be assigned the '932 Patent, and the assignment was invalid.

As a result, Verna never acquired the right to assert the '932 Patent. If a plaintiff does not have a right to assert the patent, then it lacks standing. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019). Accordingly, Verna does not have standing to maintain this suit. And because standing cannot be cured during the pendency of a case, Verna's deficient standing cannot be cured. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F. 3d 1359, 1366 (Fed. Cir. 2010).

Any objective review of this case would have shown its inevitable outcome. Verna's counsel, in particular, should have known this given that it had recently lost a case ***and was sanctioned*** for continuing to litigate despite a similar standing issue. In *Silent Communications*, the plaintiff—a Texas entity also represented by Mr. Ramey—faced a motion to dismiss for lack of standing. *Silent Comm'ns, LLC v. BlackBerry Corp.*, 6:22-cv-00252-ADA, Dkt. 57 at 5 (W.D. Tex. May 19, 2023) (attached as Ex. 3). The court found that plaintiff lacked standing because the ***plaintiff did not exist at the time of the purported conveyance*** of patent rights ***from an out-of-state entity by the same name***. *Id.* at 7–8. That court determined that because the plaintiff did not exist, it could not receive the patent rights. *Id.* Furthermore, reformation by the court was not available. *Id.* The court even found the case to be ***exceptional*** under 35 U.S.C. § 285 because of "the unreasonable manner in which Plaintiff litigated." *Silent Comm'ns*, Dkt. 106 at 7 (attached as Ex. 4). Under these circumstances, the court determined that "Plaintiff and Mr. Ramey did not

conduct an adequate pre-filing investigation into whether Plaintiff had standing to bring this lawsuit." *Id.* at 8. The factual resemblance is striking.

Still, Verna filed its Complaint against Singlewire on January 29, 2025. Verna repeatedly represented that it owns the '932 Patent by assignment—in its Complaint (Dkt. 1 at ¶ 6), in its Proof of Assignment (Dkt. 24 at 1), in its Response to Singlewire's Motion to Dismiss (Dkt. 28 at 2, 8), and most recently via correspondence (Ex. 5, March Email)—even when that position is objectively frivolous. Verna has repeatedly refused to withdraw its Complaint at numerous stages including: after receiving Singlewire's motion to dismiss (July 30, 2025), after receiving Singlewire's Rule 11 letter (March 5, 2026), and after receiving this Rule 11 motion (March 11, 2026). Instead, Plaintiff has presented multiple theories for why its suit should not be dismissed but each is frivolous.

***First***, Verna argued that the intent of the principals of Texas Verna was sufficient to bring the entity into being, regardless of "[w]hether it was a formally recognized Texas limited liability company." (Dkt. 28 at 4.) This is contrary to controlling law. In Texas, an entity cannot enter into a contract before it exists. *WesternGeco*, 246 S.W.3d at 786–787. And an entity does not exist until the certificate of formation is filed. Tex. Bus. Org. Code. § 3.001(c).

***Second***, Verna argued that Texas Verna existed as a partnership until it was formed under Texas law. (Dkt. 28 at 4–7.) However, Verna's own declarations demonstrate there was no intent to form a partnership, and so no partnership was formed. (Dkt. 31 at 2–3.) Even if there were a partnership, Texas Verna would still lack standing, because Texas Verna (the LLC) brought suit, not the purported partnership. (Dkt. 31 at 4.)

***Third***, Plaintiff posited that the Court could reform the "mutual mistake" in assignment. (Dkt. 28 at 7–8.) This argument finds no support in the law. As Singlewire explained in its previous

8

filing, reformation brings a contract in line with parties' intended agreement. (Dkt. 31 at 4–5). Reformation is not available when, as here, there is no agreement, because one of the purported parties does not exist at the time of purported contract. (Dkt. 31 at 4–5). The same argument was denied in *Silent Communications*.

**Finally**, and most recently, Verna acknowledged the standing issue and again requested an equitable reformation of the assignment "so that the effective date of that assignment" is one where Texas Verna existed. (Dkt. 36.) Singlewire had already explained in its previous briefing that reformation is not available when the party did not exist at the time of purported agreement. (Dkt. 31 at 4–6.) Furthermore, under Federal Circuit precedent, proper standing is required "on the day [a complaint] is filed" and subsequent correction of an assignment cannot cure a deficiency (Dkt. 31 at 1–2 (quoting *Abraxis*, 625 F.3d at 1366).) Verna made no attempt to address how reformation would be possible when there was no agreement nor how standing could be cured after filing.

### B.      Verna's Allegations of Infringement are Objectively Frivolous

Verna's infringement allegations in this case suffer a fatal flaw. The allegations rely solely on Singlewire's accused system placing voice calls that may reach cell phones within a geographic area, but Singlewire cannot do this because Singlewire is not a cellular carrier that controls how calls are transmitted via cellular towers. And Verna does not allege that Singlewire works with cellular carriers to restrict calls to geographic areas.

As Singlewire explained in its Motion to Dismiss, Verna must show that all steps of the claimed method are performed or attributable to Singlewire. (Dkt. 8 (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc)).) Verna asserts independent claims 1 and 18 against Singlewire. (Ex. 6, Infringement Contentions.) Both claims require "***transmitting*** the digitized voice alert through ***specific towers of a cellular***

9

*communications network* in the specified region for distribution." (Ex. 2, '932 Patent at Cls. 1, 18.)

It is undisputed that Singlewire is not a cellular communications provider and does not own, control, lease, or use any towers in a cellular network. Rather, Singlewire offers mass notification solutions to organizations and institutions to facilitate notifying their members. Although Singlewire can place voice calls, Singlewire has no relationship with a cellular provider. It uses telephone networks (cellular or otherwise) just as any other user does.

Verna's allegations make no attempt to show how Singlewire could satisfy the claims of the '932 Patent. Verna's allegations merely reference Singlewire's ability to place a "text to speech … to Mobile phones" among many communication methods and then jumps to the unsupported legal conclusion that "Singlewire Software InformaCast transmits the digitized voice alert . . . through specific towers of a cellular communications network (the cell tower near the cell phone user) in the specified region." (Ex. 6, Infringement Contentions at 15, 26.)



This is merely an unsupported legal conclusion. Verna presents no evidence, support, or basis for this bare conclusion, and as such, pursues an objectively frivolous legal contention. *See PS Prods. Inc. v. Panther Trading Co. Inc.*, 122 F.4th 893, 898 (Fed. Cir. 2024) (affirming sanctions award where the "complaint did not state a plausible claim for design patent infringement"); *Source*

*Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1302 (Fed. Cir. 2014) (affirming sanctions award where the plaintiff "failed to offer any legitimate evidence supporting a reasonable belief that it had a meritorious direct infringement claim").

No claim construction is needed to resolve Verna's frivolous infringement theory nor would claim construction change the analysis. In fact, Verna itself argued that no claim construction is necessary for this patent in two previous cases. *Verna IP Holdings, LLC v. Pocketstop, LLC*, 3:24-cv-02408-L-BW, Dkt. 28 at 2 (N.D. Tex. Nov. 3, 2025) (offering "[p]lain and ordinary meaning"); *Verna IP Holdings, LLC v. Dais, Inc. dba Regroup Corporation*, 3:23-cv-02594-E, Dkt. 37 at 4 (N.D. Tex. Nov. 20, 2024) (offering "[p]lain and ordinary meaning"). Although claim construction is not needed, this Court can consider the intrinsic record to resolve the isolated dispute without separate briefing. *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024) ("[S]ometimes a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed.")

The intrinsic record makes clear that the plain meaning of "transmitting the digitized voice alert ***through specific towers of a cellular communications network*** in the specified region . . . to at least one wireless hand-held device in communication with the specific towers of the cellular communications network in the specified region" requires ***targeting specifically selected cellular towers of a cellular communications network***. Afterall, this language in the claims describes how emergency alert systems, such as PLAN, work in cellular networks. In PLAN, for example, a government official can only send an emergency alert to "***participating*** wireless companies." (Ex. 2, '932 Patent, 20:8-14, 28:1-6 (emphasis added).) The reason they must be "participating" and not just any wireless company is because the network must be "equipped with" additional capabilities. *Id.* Specifically, the companies "***use*** their cell towers ***to forward the messages*** to

11

subscriber *in the affected area*." (*Id.* (emphasis added).) This extra capability is what allows the alert to be "geographically targeted." (*Id.* at 28:7-8.) The cellular network must be equipped to make a deliberate selection of cellular towers in the specified region. As a result, the cellular network can alert a New Yorker of a threat when he or she is home but would not alert if they are in Chicago that day. (*Id.* at 28:8-12.)

Rather than accepting the plain meaning from the patent, Verna seeks to rewrite the claims to capture simply placing a call to cell phones for people registered as New York residents. If those individuals happen to be home, that individual would receive the alert. But, under Verna's rewriting, any of the New York residents who happen to be somewhere else in the world would also receive the alert, contrary to the description in the patent. This interpretation renders the claim language superfluous. If Verna were correct, there would be no need for all the language in the claimed phrase. The patentee could have simply claimed "transmitting the digitized voice alert through . . . a cellular communications network . . . to at least wireless hand-held device . . . in the specified region." But the patentee included all the claim language—"*through specific towers*" and "*in communication with the specific towers*"—for a reason. These phrases should not be rendered superfluous. *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.") (citation omitted).

As such, the claims cannot cover targeting an individual or a cell phone which may be anywhere in the world, and Singlewire cannot possibly infringe the claims.

**C.      Sanctions are Necessary to Deter Verna and Verna's Counsel from Pursuing Future Frivolous Cases**

Singlewire requests that the Court impose sanctions sufficient to address and deter the objectively baseless and abusive litigation conduct of Verna and its counsel. Verna and Mr. Ramey

12

have demonstrated that they will continue to harass defendants by filing cases without proper standing and asserting objectively frivolous allegations. This frivolous lawsuit is not an isolated incident but part of a broader pattern of improper conduct by Verna and Mr. Ramey. Both Verna and Mr. Ramey have been sanctioned for such behaviors in the past yet continue to employ the same tactics.

Verna's predecessor, New Mexico Verna, was sanctioned for "litigation conduct [that] was objectively unreasonable." *Verna IP Holdings, LLC v. Alert Media, Inc.*, No. 6:21-CV-00422-ADA, 2023 WL 5918320, at *4 (W.D. Tex. Sept. 11, 2023). In that case, Verna asserted a family member of the '932 Patent. The court ruled that "Verna's litigating position was devoid of any substantive strength, Verna had been apprised that its position lacked merit, and yet Verna had moved to dismiss without prejudice," and the "facts underline the exceptional nature of this case." *Id.* at * 5. Here, Verna has taken this a step further and continues to litigate the case in view of a position "devoid of any substantive strength."

Verna's counsel, Bill Ramey, has been frequently sanctioned—and his clients ordered to pay defendants' attorneys' fees—in many cases for asserting meritless claims, including a recent case where his client lacked standing but proceeded in its claim regardless. His frivolous and vexatious conduct led to an ***injunction*** from filing future complaints for patent infringement in the Western District of Texas ***without advance permission*** of the court. *See mCom IP, LLC v. Cisco Sys. Inc.*, No. 6:22-CV-00261-ADA, Dkt. 78 (W.D. Tex. Dec. 18, 2025) (enjoining Ramey and collecting cases) (attached as Ex. 7). As the court in *mCom* summarized:

> Mr. Ramey's conduct [] has been subject to sanctions in other courts in addition to the Western District of Texas. In the last five years, district courts in California, Texas, and New York sanctioned Mr. Ramey and his associates under § 285 at least nine times. *WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020); *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262-RA, 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020); *ZT IP, LLC v. VMware, Inc.*, No. 3:22-

CV-0970-X, 2023 WL 1785769 (N.D. Tex. Feb. 6, 2023); *Traxcell Tech., LLC v. Huawei Tech. USA, Inc.*, No. 2:17-CV-44-RWS-RSP, 2023 WL 2625948 (E.D. Tex. Mar. 24, 2023); *EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023), *aff'd*, No. 2024-1201, 2025 WL 3274847 (Fed. Cir. Nov. 25, 2025); *Verna IP Holdings, LLC v. Alert Media, Inc.*, No. 6:21-CV-00422-ADA, 2023 WL 5918320 (W.D. Tex. Sep. 11, 2023); *Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.*, No. 3:23- CV-00791-N, 2024 WL 815553 (N.D. Tex. Feb. 27, 2024); *VDPP, LLC v. Volkswagen Group of America, Inc.*, No. 4:23-cv-02961, 2024 WL 3378456 (Jul. 11, 2024 S.D. Tex); *Koji IP, LLC v. Renesas Electronics America, Inc.*, No. 24-cv-03089-PHK, 2025 WL 980796 (N.D. Cal. Mar. 31, 2025)

(Ex. 7, *mCom* Order at 10.) The court found that Mr. Ramey "unreasonably multiplied the proceedings," "persistently prosecuted a 'meritless claim,'" "show[ed] s a reckless disregard for his duty to this Court," and presented "allegations [] made in bad-faith without any semblance of a proper pre-suit investigation" *Id.* at 10-11. Ultimately, the court ruled that Mr. Ramey's conduct warranted enjoining Mr. Ramey and Ramey LLP "from filing future complaints in the Western District of Texas asserting a claim of patent infringement without the advance permission from a judge of the Western District of Texas, the Fifth Circuit, or a delegee thereof." *Id.* at 17. As explained above, Mr. Ramey was also held jointly and severally liable for a fee award due to lack of standing in almost an identical situation to the present case. (Ex. 7, *Silent* Fee Award at 11-12.)

At minimum, the Court should dismiss this case with prejudice and award Singlewire its fees and costs. And given that prior warnings and sanctions failed to deter similar conduct, harsher measures may be necessary to send a sterner message.

## IV.    CONCLUSION

Despite being put on notice in a letter, a motion to dismiss, and counterclaims, Plaintiff's counsel refuses to acknowledge the lack of merit in this case and should be sanctioned. Should the Court grant Singlewire's motion, Singlewire respectfully requests an award of attorneys' fees, and respectfully requests fourteen days after the Court's order to submit an accounting of any such fees and costs associated with the sanctioned conduct.

14

Dated: April 2, 2026

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Neil J. McNabnay*
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Philip G. Brown (*pro hac vice*)
pgbrown@fr.com
Texas Bar No. 24132695
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**ATTORNEYS FOR DEFENDANT
SINGLEWIRE SOFTWARE, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on April 2, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Neil J. McNabnay*
Neil J. McNabnay

**<u>CERTIFICATE OF COMPLIANCE WITH RULE 11(c)(2)</u>**

In compliance with Federal Rule 11(c)(2), Singlewire served Verna with a copy of this Motion on March 11, 2026. Verna did not provide any response to the service of the Motion.

*/s/ Neil J. McNabnay*
Neil J. McNabnay

15