# EXHIBIT 7

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **MCOM IP, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 6:22-CV-00261-ADA** |
| | § | ████████████████ |
| **CISCO SYSTEMS, INC.,** | § | |
| | § | |
| **Defendant.** | § | **PUBLIC VERSION** |
| | § | |

<u>**ORDER GRANTING DEFENDANT'S MOTION FOR
RECOVERY OF ATTORNEYS' FEES AND FOR SANCTIONS**</u>

Before the Court is Cisco's Motion for Recovery of Attorneys' Fees and for Sanctions. ECF Nos. 52; 60; 63. The Court held oral argument on December 14, 2023 and took the motion under advisement. *See* ECF No. 74. For the reasons stated below, the Court now **GRANTS** Cisco's motion. Plaintiff mCom IP, LLC and its counsel, Mr. William Ramey, are **ORDERED** to pay Defendant Cisco Systems, Inc., a joint and several award of $72,551.60 in attorneys' fees. This award represents the attorneys' fees Cisco incurred preparing and arguing its first and second Motions to Dismiss and is an amount reasonable under the prevailing standard for computation. *See* 35 U.S.C. § 285; 28 U.S.C. § 1927. Additionally, for the reasons stated below, William Ramey and Ramey LLP ("Mr. Ramey") are hereby **ENJOINED** from filing future complaints in the Western District of Texas asserting a claim of patent infringement without the advance permission from a judge of the Western District of Texas, the Fifth Circuit, or a delegee thereof. Mr. Ramey is required to attach a copy of this order with any complaint Mr. Ramey or Ramey LLP files in the Western District of Texas that includes a claim of patent infringement.

## I.    Background

### a.   mCom and Mr. Ramey's Conduct in This Case

mCom filed a complaint accusing Cisco of infringing U.S. Patent No. 8,862,508 ("'508 Patent") on March 10, 2022. ECF No. 1. mCom alleged that Cisco infringed claims 1–20 of the '508 Patent by offering a unified electronic banking system. *Id* at ¶ 8; '508 Patent, cl. 13. But mCom only provided an exemplary infringement chart for claim 13. ECF No. 1-1. At that time, the '508 Patent, including claim 13, was already subject to an instituted *inter partes* review proceeding. *See* ECF No. 11-2. Thus, Cisco filed a motion to stay this case pending the outcome of the IPR proceedings. ECF No. 11.

1

To avoid this Court granting Cisco's Motion to Stay, mCom argued that the ongoing IPR proceedings would not address certain claims that mCom planned to properly assert against Cisco. *See* ECF No. 15 at 2 (identifying that "claims 2, 8, 14, and 17" are not subject of the IPR). The Court set a hearing for oral argument on Cisco's Motion to Stay. Counsel for mCom failed to appear for the first setting. ECF No. 25. Ultimately, the Court denied Cisco's Motion to Stay partially based on mCom's representation that the IPR did not address additional claims mCom intended to properly assert against Cisco. *See* ECF No. 42 at 5–6.

While Cisco's Motion to Stay was pending, Cisco also filed a motion to dismiss mCom's Complaint, arguing that the original complaint failed to identify a specific Cisco product and many of the steps in asserted claim 13 would be performed, if at all, by Cisco's clients. ECF No. 17 at 1. Eventually, mCom voluntarily dismissed its indirect infringement allegations, and the Court dismissed mCom's direct infringement claims without prejudice. ECF No. 44 at 16:10–17:5, 20:6-23. mCom filed an amended complaint four weeks later. ECF No. 43. mCom's amended complaint added additional infringement allegations for claims 2, 8, 14, and 17—the claims not challenged in the pending IPR proceedings. ECF Nos. 43 ¶¶ 8–12; 43-1; 52 at 3. mCom's example infringement contentions relied upon graphics and screenshots from Cisco marketing materials and user interfaces. *See* ECF No. 53-1. Similar to the issues with mCom's original complaint, mCom's amended complaint failed to identify any specific product, chart certain claim limitations (*e.g.*, a "customer profile"), and failed to provide an explanation of how the pictured graphics mapped to the claim language. *See, e.g.*, ECF No. 53-1 at 7, 11 (failing to explain how the cited evidence maps to a Cisco customer profile or stores transactional usage data associated with an e-banking touchpoint).

2

Cisco moved to dismiss mCom's Amended Complaint for the same reasons outlined in Cisco's first Motion to Dismiss. *See* ECF Nos. 45 at 1; 52 at 5–6. Key here, mCom relied upon the same graphics contained in mCom's Original Complaint, which mCom failed to link to any Cisco product, ignoring this Court's prior instructions. *See* ECF Nos. 52 at 6; 44 at 17:15–20. More concerning, however, is that mCom maintained its allegations of indirect infringement, despite voluntarily dismissing its indirect infringement claim, and being told by this Court that it may bring the claim after it conducted discovery, which had yet to occur. ECF No. 43 ¶¶ 10–12; *see* ECF No. 44 at 20:19–21:7.

The Court set a hearing for oral argument on Cisco's Motion to Dismiss mCom's Amended Complaint. ECF No. 48. Due to Mr. Ramey's prior failure to attend a hearing, the Court emailed a reminder to all counsel on the morning of the hearing. ECF No. 52-3 ("Just a friendly reminder of the hearing at 9:30 a.m. this morning on the Court's public Zoom link."). Counsel for mCom failed to appear. ECF No. 49. The Court heard arguments from Cisco, granted the motion, and dismissed mCom's complaint with prejudice. ECF Nos. 49; 50. Cisco then filed its Motion for Recovery of Attorneys' Fees and for Sanctions.

### b. Mr. Ramey's Conduct Against Cisco and Others in WDTX

At the time of Cisco's Motion for Attorneys' Fees, Mr. Ramey had filed multiple lawsuits against Cisco. The lawsuits contained a variety of issues that led to their dismissal. For example, Mr. Ramey filed lawsuits where (1) he did not plausibly allege infringement after multiple opportunities to amend, (2) his client lacked standing to assert the patent, and (3) the complaint was dismissed under 35 U.S.C. § 101, where family members of the asserted patent had already been declared patent ineligible under § 101. ECF No. 52 at 8–10; *AK Meeting IP LLC v. Cisco Sys., Inc.*, 6:22-cv-00248-ADA, ECF No. 39 (W.D. Tex. Dec. 28, 2022) (no plausible infringement

3

allegations); *CTD Networks LLC v. Cisco Sys.*, Inc., 6:22-cv-01039-XR, ECF No. 49 (W.D. Tex. Aug. 16, 2023) (no plausible infringement allegations with costs awarded); *VIAAS Inc. v. Cisco Sys., Inc.*, 6:22-cv-01047-KC, ECF No. 42 (W.D. Tex. Apr. 25, 2023) (alleging infringement against four defendants despite the plaintiff lacking standing); *Front Row Technologies, LLC v. Cisco Sys., Inc.*, 6:23-cv-00035-AM, ECF No. 25 (W.D. Tex. Sep. 13, 2023) (similar claims found ineligible under §101 in prior litigation).

### c. Mr. Ramey's Prior Conduct in Other District Courts

Cisco argues Mr. Ramey's conduct in this litigation is essentially part of a playbook, which begins when Mr. Ramey files an infringement case with minimal pre-suit investigation. ECF No. 52 at 1. Then, Mr. Ramey offers a nuisance settlement. ECF No. 60 at 20–21; *see e.g.,* ECF Nos. 52-4 ("Before your client spends resources preparing this matter, my client wanted me to make a demand of $250,000[]"); 52-6 ("$35,000 … [w]e expect to increase the offer after your client pleads or otherwise answers"). Third, if the case does not settle or is not dismissed by the Court, Mr. Ramey voluntarily dismisses the case once any burden shifts back to his client. *Compare*, *VIAAS Inc. v. Cisco Sys., Inc.*, 6:22-cv-01047-KC, ECF No. 42 (W.D. Tex. Apr. 25, 2023) (granting defendant's motion to dismiss for failure to state a claim), *with*, *Koji IP, LLC v. Renesas Electronics America, Inc.*, 3:24-cv-03089-PHK, ECF No. 12 (N.D. Cal. Jun. 24, 2024) (voluntarily dismissing after defendant sought to test the merits of the plaintiff's case).

Mr. Ramey's conduct, similar to the above, has been subject to sanctions in other courts in addition to the Western District of Texas. In the last five years, district courts in California, Texas, and New York sanctioned Mr. Ramey and his associates under § 285 at least nine times. *WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, (E.D. Tex. Feb. 4, 2020); *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262-RA, 2020 WL 7264162, (S.D.N.Y. Dec. 10, 2020); *ZT IP,*

*LLC v. VMware, Inc.*, No. 3:22-CV-0970-X, 2023 WL 1785769, (N.D. Tex. Feb. 6, 2023); *Traxcell Tech., LLC v. Huawei Tech. USA, Inc.*, No. 2:17-CV-44-RWS-RSP, 2023 WL 2625948, (E.D. Tex. Mar. 24, 2023); *EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 WL 5257691, (N.D. Cal. Aug. 16, 2023), *aff'd*, No. 2024-1201, 2025 WL 3274847 (Fed. Cir. Nov. 25, 2025); *Verna IP Holdings, LLC v. Alert Media, Inc.*, No. 6:21-CV-00422-ADA, 2023 WL 5918320, (W.D. Tex. Sep. 11, 2023); *Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.*, No. 3:23-CV-00791-N, 2024 WL 815553, (N.D. Tex. Feb. 27, 2024); *VDPP, LLC v. Volkswagen Group of America, Inc.*, No. 4:23-cv-02961, 2024 WL 3378456, (Jul. 11, 2024 S.D. Tex); *Koji IP, LLC v. Renesas Electronics America, Inc.*, No. 24-cv-03089-PHK, 2025 WL 980796, (N.D. Cal. Mar. 31, 2025).

## II. Legal Standard

### a. Attorneys' Fees Under 35 U.S.C. § 285

In exceptional cases, the court may award reasonable attorney fees to the prevailing party. 35 U.S.C § 285. "The burden is on the moving party to prove, by a preponderance of the evidence, that the case 'stands out from others,' 'considering the totality of the circumstances,' including the strength of the parties' litigating positions and their conduct in the litigation." *EscapeX IP, LLC v. Google LLC*, No. 2024-1201, 2025 WL 3274847, at *4 (Fed. Cir. Nov. 25, 2025) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

### b. Sanctions Under 28 U.S.C. § 1927

Courts can order an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to pay the "excess costs, expenses, and attorneys' fees reasonably incurred" by "intentional or reckless disregard of the attorney's duties to the Court." 28 U.S.C. § 1927; *Julien v. Zeingue*, 864 F.2d 1572, 1575 (Fed. Cir. 1989) (internal quotations omitted). "An attorney acts

with 'reckless disregard' of his duty to the court when he, without reasonable inquiry, advances a baseless claim despite clear evidence undermining his factual contentions." *Morrison v. Walker*, 939 F.3d 633, 638 (5th Cir. 2019) (internal quotation omitted).

### c.  Pre-filing Injunction

District courts have the discretion to issue pre-filing injunctions as necessary to protect both the court and future parties from vexatious, abusive, and harassing litigation. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986)). A pre-filing injunction "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.* at 187 (citation omitted). When sanctions and dismissal are ineffective against vexatious litigation, broader injunctions are available to address counsel's widespread abuse and harassment. *Id.*; *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1115 (5th Cir.1986).

## III.  Discussion

### a.  Reasonable Attorneys' Fees Under 35 U.S.C. §285

#### 1.  Prevailing Party

Only the prevailing party may be awarded attorneys' fees under 35 U.S.C. § 285. When a Court grants an opposed motion to dismiss with prejudice, the moving party becomes a "prevailing party." *Future Link Sys., LLC v. Realtek Semiconductor Corp.*, 154 F.4th 1370, 1377 (Fed. Cir. 2025). Here, the Court granted Cisco's Motion to Dismiss with prejudice. ECF No. 50. Thus, Cisco is a prevailing party.

#### 2.  Exceptional Cases

A Court may find a case exceptional when a party conducts litigation in an unreasonable manner or advances substantively weak positions. *Octane*, 572 U.S. at 555. Courts should

consider an attorney's pattern of litigation conduct if the defendants present adequate evidence. *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1352 (Fed. Cir. 2015); *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1389–90 (Fed. Cir. 2017). Abusive, bad-faith litigation is characterized by repeated patent infringement filings for the sole purpose of forcing settlements, absent the intention to test the case's merits, and is relevant to the § 285 exceptional determination. *Newegg*, 793 F.3d at 1350; *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (finding that the patentee acted in subjective bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement); *see also Rothschild*, 858 F.3d at 1389–90 (finding bad faith when patentee filed and settled fifty-eight other cases for "significantly below" the cost of defending an infringement lawsuit). In making the determination, courts consider factors such as frivolousness, motivation, objective unreasonableness … and the need to advance considerations of deterrence. *Octane*, 572 U.S. at 554 n.6. Flawed infringement positions can cause a case to stand out for being "meritless" and "frivolous." *Blackbird Tech LLC v. Health in Motion LLC*, 944 F.3d 910, 914 (Fed. Cir. 2019).

Here, mCom argues that this case is not "exceptional" because "nothing rare happened," and it was "normal litigation." ECF No. 60 at 1, 7. Cisco argues that mCom's failure to meaningfully amend its complaint and failure to attend two of the Court's scheduled hearings should render this case exceptional under 35 U.S.C. § 285. ECF No. 52 at 12–14. mCom rebuts Cisco by saying it substantially revised its pleading by including different text and a further level of specificity in the Amended Complaint. ECF No. 60 at 10. mCom, additionally, points to the fact that it retained an expert to support its argument that it conducted an adequate pre-filing investigation. *Id.* at 12.

7

mCom and Mr. Ramey advanced substantively weak positions in an unreasonable manner. The Court finds the inadequacy of mCom's Complaints supports Cisco's argument that mCom and Mr. Ramey did not conduct a sufficient pre-filing investigation. The similar, if not identical, deficiencies between the Amended and Original Complaint provide further evidence of a lack of pre-suit investigation. Mr. Ramey, twice, submitted unconnected screenshots from Cisco's marketing materials to accuse Cisco of providing a banking system. ECF Nos. 1; 43. Even after dismissing the first complaint, Mr. Ramey filed a nearly identical complaint containing nearly identical issues. The complaints failed to identify a single Cisco product that allegedly met the Asserted Patent's claim elements. Moreover, the complaints ignored key elements in the claim language that Cisco could not perform and did not tie the claim language to the marketing material. *See* § I.a, *supra*. Thus, this Court dismissed both complaints. ECF Nos. 44; 50. mCom's failure to identify any accused product is similar to the plaintiff in *Blackbird Tech*. In *Blackbird*, the plaintiff accused an actual product despite the product missing a structural component required by the claim's limitations. 944 F.3d at 915. Here, not only did mCom fail to identify key claim limitations, mCom additionally failed to identify any actual product—twice. Thus, the Court finds that mCom's multiple flawed complaints, one filed after the Court granted Cisco's Motion to Dismiss, to be a sign of a substantively weak litigation position advanced in an unreasonable manner.

The fact that Mr. Ramey hired an experienced Electronics Engineering Technologist to prepare the claim charts (ECF No. 60 at 14) does not change the Court's analysis. As Cisco points out, "if Mr. Ramey[] had reviewed those charts, he would have known that the engineer's charts identify *no actual Cisco product*." ECF No. 63 at 7 (emphasis added). Moreover, Mr. Ramey, an attorney well-versed in patent litigation, would have been alerted to the issue that Cisco could not

perform certain steps that the expert identified as Cisco performing.  Identifying a product is the basis of an infringement complaint, and after his years of experience, Mr. Ramey should understand the task, particularly after explicit instructions from the court on what to identify in the amended complaint.  ECF No. 44 at 18:24-19:2 ("[D]o your best shot at making clear to Cisco [] what part of the Cisco system … meets the five elements of this claim, Claim 13.").  The Court finds that hiring an expert to prepare charts, without more, cannot shield Mr. Ramey and mCom from sanctions.

The pattern of cases involving similar misconduct to the instant case should be considered in determining whether a case is exceptional enough to warrant § 285 sanctions.  *Newegg*, 793 F.3d at 1352; *Rothschild*, 858 F.3d at 1390. Similar to *Rothschild*, mCom and Mr. Ramey have shown a history of filing substantively weak pleadings followed by numerous offers to settle for significantly below the cost of litigating a complex patent infringement case.  ECF No. 63 at 1 (settlement offers); *see mCom IP LLC v. City Nat'l Bank of Fla.*, No. 23-23427-CIV, 2025 WL 1047149, at *1 (S.D. Fla. Mar. 11, 2025) (recommending fees); § I.b, *supra* (identifying cases against Cisco).[1]  The parties disagree about whether mCom's settlement offers are too large to be "nuisance" offers.  ECF No. 60 at 20; ECF No. 63 at 1.  The Court finds that mCom and Mr. Ramey offered nuisance settlements not tethered to the merits of the case, considering the expense of patent litigation, the swiftness of the settlement offers, and Mr. Ramey's references to ending litigation before Cisco "spends resources preparing this matter."  ECF Nos. 52-4 at 2; 60 at 20; 63 at 1.

---

[1]  Docket Navigator indicates that mCom asserted the '508 Patent roughly 80 times, with only one case reaching a claim construction order.  *See* Docket Navigator, https://search.docketnavigator.com/patent/patent/69331/ (comparing "Cases" and "Claim Constructions" tabs) (last accessed December 16, 2025).

9

The Court finds that Cisco has shown by the preponderance of the evidence that mCom and Mr. Ramey's conduct in this case "stands out from others" due to mCom and Mr. Ramey's legally and factually flawed infringement positions, repeated insufficient complaints, missed hearings, and attempts to extract a nuisance settlement. *Octane*, 572 U.S. at 554. Thus, the Court finds this case exceptional and will award reasonable attorneys' fees to Cisco under § 285. Next, the Court will consider Cisco's request for sanctions under 28 U.S.C. § 1927.

### b. Sanctions Under 28 U.S.C. § 1927

Title 28 of United States Code, Section 1927 authorizes courts to require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" when an attorney's conduct "unreasonably and vexatiously" multiplies proceedings. 28 U.S.C. § 1927. Evidence of sanctionable behavior can include repeated filings despite court warnings or "other proof of excessive litigiousness." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002).

Here, Mr. Ramey's actions unreasonably multiplied the proceedings because he filed an amended complaint that contained all the deficiencies as the first dismissed complaint. *See* ECF Nos. 43; 44 at 18:23–19:2 (describing what needed to be included in the Amended Complaint); 52 at 6 (comparing graphics from the first complaint and the amended complaint); 52 at 14; § I.a, *supra.* As discussed above, these filings contained legally and factually weak litigation positions. § III.a.2, *supra*. Thus, the Court finds that Mr. Ramey persistently prosecuted a "meritless claim" and unreasonably multiplied the proceedings. *Procter*, 280 F.3d at 525.

Additionally, Mr. Ramey's conduct shows a reckless disregard for his duty to this Court. Mr. Ramey failed to appear at half of the scheduled hearings for this case including hearings for (1) Cisco's Motion to Stay the Case and (2) Cisco's Motion to Dismiss mCom's Amended

Complaint. ECF Nos. 25; 49. Moreover, Mr. Ramey avoided this Court granting Cisco's Motion to Stay by arguing that mCom intended to properly assert additional claims against Cisco that were not included in the instituted *inter partes review*. ECF No. 15 at 2 (identifying that "claims 2, 8, 14, and 17 are not subject of the IPR"). But those additional allegations lacked merit and included the same problems that Mr. Ramey was on notice of due to Cisco's pending Motion to Dismiss. ECF No. 50. This Court finds that Mr. Ramey and mCom added infringement contentions against the non-instituted claims based on a desire to avoid a litigation stay, and that the allegations were made in bad-faith without any semblance of a proper pre-suit investigation. Mr. Ramey's conduct multiplied the proceedings vexatiously and shows a reckless disregard for his duty to this Court. Thus, the Court finds that Mr. Ramey's conduct is sanctionable under § 1927.

Mr. Ramey's conduct must be linked to the size of the sanctions requested by Cisco. *Procter*, 280 F.3d at 526. Cisco requests fees for litigating its first and second Motions to Dismiss. ECF No. 52 at 15. Cisco filed its first Motion to Dismiss after its Motion to Stay and its second Motion to Dismiss after this Court denied Cisco's Motion to Stay. ECF Nos. 11; 17; 42; 45. The Court denied Cisco's Motion to Stay based in part on Mr. Ramey's representation that he had a good-faith basis to assert additional claims not involved in the IPR proceedings. *See* ECF No. 42. The challenged claims were held unpatentable in the corresponding IPR. *Unified Patents, LLC, v. mCom IP, LLC*, IPR2022-00055, Paper 30. Thus, Cisco would not have had to spend time litigating these motions absent Mr. Ramey's misconduct. Thus, the Court finds that the requested fees are linked to Mr. Ramey's unreasonable and vexatious conduct sufficient to satisfy § 1927.[2] Next, the Court discusses reasonableness of Cisco's requested reward.

---

[2] mCom does not argue that any other lawyer was responsible for Mr. Ramey's conduct in this case, despite other lawyers signing pleadings and attending hearings. ECF No. 60 at 16.

### c. Reasonable Fees

Having decided that sanctions are warranted, the court must next decide what amount to award. District courts have discretion in setting fee awards. *Fox v. Vice*, 563 U.S. 826, 838–39 (2011). When exercising its discretion to award reasonable attorneys' fees, Courts should consider each attorney's "comparable skill, experience, and reputation," in addition to "us[ing] its own experience." *Blackbird Tech LLC*, 944 F.3d at 914 (citing *Blum v. Stenson*, 465 U.S. 886, 888, n.5 (1984)); *Bagby Land & Cattle Co. v. Cal. Livestock Comm'n Co.*, 439 F.2d 315, 318 (5th Cir. 1971). The Fifth Circuit has affirmed the lodestar method to calculate reasonable attorneys' fees by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

Cisco requests $72,551.60, which corresponds to 96.3 hours total at roughly $753 per hour, for the time required to brief and argue Cisco's first and second Motions to Dismiss. ECF No. 52 at 14; *see also* ECF Nos. 52-1; 52-2 ¶¶ 7–8, 11–12, 15. Mr. Ramey argues that the hourly rate used in Cisco's lodestar calculations is extreme relative to local rates and should be reduced to reflect Texas rates from the 2021 American Intellectual Property Law Association Report. ECF No. 60, 17–18; *see also* ECF No. 52-1, Tables 2 and 3. The Court finds Cisco's proposed total fee, hours spent, and hourly rate are reasonable due to the complexity of patent litigation and the experience and reputation required to represent Cisco in a patent litigation lawsuit.

The Court finds that $753 per hour is reasonable and competitive with those of other Texas and nationwide law firms that practice patent litigation of similar complexity. The Court also finds that 96.3 hours is a reasonable amount of time spent briefing multiple motions and attending multiple hearings. The billing sheet Cisco provided sufficient proof to justify the hours billed. Additionally, the description of each attorney's qualifications sufficiently supports their hourly

12

rate. Mr. Ramey argues that those fees were too high based on where this court sits, however, patent litigation is a specialized field practiced nationwide. The hourly rate billed here are reasonable in this specific context. Further to that point, Mr. Ramey's settlement offers specifically discuss the expense of litigating a patent infringement lawsuit. Mr. Ramey cannot now turn around and argue those fees are unreasonable, when he himself attempted to benefit from patent litigator's billing rates. Moreover, Cisco ensured its calculation remained reasonable by discounting its fees by twenty percent, further cutting against Mr. Ramey's "extreme" argument. Thus, the Court finds that $72,551.60 is a reasonable award.

### d. Pre-filing Injunction

A court may enter a pre-filing injunction to control its docket and deter "vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (citing *Farguson*, 808 F.2d at 360). A court may enjoin parties and their counsel. *Newby v. Enron Corp.*, 302 F.3d 295, 303 (5th Cir. 2002) ("[I]t is the matter of lawyers as officers of the court conducting themselves in ways that do not impede the work of the courts—the genuine and not false service to their clients."). The Fifth Circuit utilizes the *Baum* factors to determine if a pre-filing injunction is appropriate. *Nix v. Major League Baseball*, 62 F.4th 920, 938 (5th Cir. 2023). The *Baum* factors are (1) the firm's history of litigation, in particular whether the firm has filed vexatious, harassing, or duplicative lawsuits; (2) whether the firm had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. *Nix*, 62 F.4th at 936–37 (quoting *Baum*, 513 F.3d at 189). Pre-filing injunctions "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Baum*, 513 F.3d at 187 (citation omitted).

Mr. Ramey argues that dismissing the case with prejudice is punishment enough and that a pre-filing injunction is an extreme measure that is inappropriate here, as his cases against Cisco were neither harassing nor vexatious. Dec. 14, 2023 Hr'g Tr. 11:17–21;[3] ECF No. 60 at 17–19. Cisco argues that Mr. Ramey's conduct met all four *Baum* factors by repeatedly suing Cisco on baseless allegations in pursuit of nuisance value settlements and telling Cisco that it could avoid attorneys' fees by resolving the cases quickly. ECF No. 52 at 17. The Court agrees that Mr. Ramey's actions satisfy the *Baum* factors and warrant a pre-filing injunction.

Mr. Ramey's history of filing meritless lawsuits meets *Baum* factor one. Mr. Ramey filed at least four meritless cases against Cisco between 2022 and 2023 alone. ECF No. 52 at 8. Moreover, Cisco provided evidence of Mr. Ramey's pursuit of a nuisance settlements and poor due diligence for multiple cases that show Mr. Ramey's vexatious nature. ECF Nos. 52-4; 52-5; 52-6; 52-7; 52-8. Despite Mr. Ramey's urging to consider only the instant *mCom* case, the *Baum* factors require courts to use a wider lens. While the plaintiffs may change, the sole common denominator is Mr. Ramey—including his settlement offers and his failure to conduct proper pre-suit investigations. This conduct across similar patent cases establishes a pattern of, at the least, filing harassing lawsuits. *See* § I.b–c, *supra.* Thus, Mr. Ramey's conduct satisfies *Baum* factor one.

Mr. Ramey's consistent failure to conduct proper pre-suit investigations and attend hearings meets factor two. Mr. Ramey's conduct shows he lacked a good-faith basis to bring multiple lawsuits absent an intent to harass for nuisance settlements. *See* § I, *supra.* Mr. Ramey argued at the motion for sanctions hearing that, "if the U.S. issues a valid patent, there's a good

---

[3] The parties did not order a final copy of this transcript, thus, no final copy exists at the time of this writing.

faith basis to bring the lawsuit. Litigants have a right to sue Cisco." Dec. 14, 2023 Hr'g Tr. 18:19–22. The Court disagrees. Mr. Ramey conflates a presumption of patent validity with a presumption of a good-faith basis for patent infringement. No such presumption exits, which is why litigants, and their counsel, must perform adequate pre-suit investigations. Thus, Mr. Ramey's conduct satisfies *Baum* factor two.

Mr. Ramey's conduct burdens the courts and other parties extensively enough to meet *Baum* factor three. Mr. Ramey suggests that the short life of this case placed a limited burden on the Court and the parties. *See* ECF No. 60 at 5. The Court disagrees. Mr. Ramey's actions wasted more than seventy-two thousand dollars of Cisco's resources. That total excludes the cost this Court incurred to prepare for and set two hearings that Mr. Ramey and his associates failed to appear. This conduct wastes Court resources spent analyzing both deficient pleadings and all the briefs associated with both of Cisco's Motions to Dismiss. While the case lasted less than a year, the damage done in that time further justifies this sanction. Moreover, according to this Court's records, Mr. Ramey has filed over 600 patent litigation lawsuits since 2021 in the Western District of Texas, clogging the Court's docket and wasting valuable resources. Thus, Mr. Ramey's conduct satisfies *Baum* factor three.

Mr. Ramey's continued failure to complete proper pre-suit investigations despite numerous fee awards shows that alternative sanctions are inadequate, thus meeting *Baum* factor four. This Court located nine instances of courts finding cases litigated by Mr. Ramey "exceptional" enough to warrant § 285 sanctions. *See* § I.c, *supra* (citing cases). Still, Mr. Ramey continues the cycle of filing a patent case, offering a nuisance settlement, and eventually voluntarily dismissing the case when the burden shifts back to his client. The Court finds that monetary sanctions and prior

15

court orders have not stopped Mr. Ramey's conduct. Thus, Mr. Ramey's conduct satisfies *Baum* factor four.

Mr. Ramey argues that a prefiling injunction prevents litigants the freedom to choose his firm to represent them in patent matters. Dec. 14, 2023 Hr'g Tr. 43 18:20–22. The Court disagrees that this sanction is overly limiting or prevents litigants from choosing Mr. Ramey. A pre-filing injunction must be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Baum*, 513 F.3d at 190. The Court finds that the Court's pre-filing injunction is sufficiently tailored to preserve the legitimate rights of litigants.

First, the pre-filing injunction will, in theory, require Mr. Ramey to conduct a proper pre-suit investigation, protecting the rights of innocent defendants and the Western District of Texas courts. Second, Mr. Ramey may still file patent infringement lawsuits in the Western District of Texas, but he first must receive leave of the court. This pre-filing injunction does not prevent Mr. Ramey from representing clients, the pre-filing injunction only delays the proceedings. Third, this pre-filing injunction is tailored to include only lawsuits asserting a claim of patent infringement. This pre-filing injunction does not limit Mr. Ramey's ability to file other complaints. Fourth, the Court dismissed this case with prejudice when Mr. Ramey and his associates failed to appear for a dispositive hearing. ECF Nos. 49; 50. Thus, this pre-filing injunction will also serve to protect his innocent future clients by putting them on notice of his prior litigation conduct. Thus, the Court finds that the pre-filing injunction is sufficiently narrowly tailored.

## IV.    Conclusion

For the reasons above, Cisco's Motion for Recovery of Attorneys' Fees and for Sanctions, (ECF No. 52), is **GRANTED**. mCom and Mr. William Ramey are **ORDERED** to pay Cisco a

joint and several award of $72,551.60 in attorneys' fees, which represents the reasonable attorneys' fees required for Cisco to brief and argue its first and second Motions to Dismiss (ECF Nos. 17; 45).

Additionally, for the reasons stated above, William Ramey and Ramey LLP are hereby **ENJOINED** from filing future complaints in the Western District of Texas asserting a claim of patent infringement without the advance permission from a judge of the Western District of Texas, the Fifth Circuit, or a delegee thereof. Mr. Ramey is required to attach a copy of this order with any complaint Mr. Ramey or Ramey LLP files in the Western District of Texas that includes a claim of patent infringement.

Signed this day the 16th day of December, 2025.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

17